UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| STEPHEN W. MULLICAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 3:04-cv-589 |
| | ) | 3:03-cr-134 / 1:96-cr-39 |
| UNITED STATES OF AMERICA | ) | (VARLAN) |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 filed by petitioner Stephen M. Mullican ("Mullican"). For the following reasons, the § 2255 motion will be **DENIED** and this action will be **DISMISSED**.

I. Standard of Review

This court must vacate and set aside Mullican's conviction upon a finding that "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail under § 2255, Mullican "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the court is to determine after a review of the answer and the records of the case whether an evidentiary hearing is required. If the motion to vacate, the answer and the records of the case show conclusively that Mullican is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.  Factual Background

Mullican pleaded guilty to armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). As part of his plea agreement, Mullican stipulated in writing to the following factual basis:

> On September 26, 2003, at approximately 3:30 p.m., defendant Stephen Wayne Mullican, also known as Fenton Hobbs, robbed the Sevier County Bank, 3260 Parkway, Pigeon Forge, Tennessee. Mullican entered the bank and set a canvas bag on the teller counter and demanded money. When the teller hesitated, Mullican produced an item which appeared to be a handgun and again demanded money. The teller complied and placed $5,610 in the bag and Mullican then fled the bank.
>
> At about the same time as Mullican was leaving the bank, a concerned citizen passing by noticed a white male running from the bank and get into a Ford Aerostar mini van and hurriedly drive off. Although the concerned citizen lost sight of the van briefly, he spotted it soon thereafter weaving in and out of traffic. The concerned citizen was then able to get the Georgia license plate number displayed on the rear of the van and relay that information along with the direction of travel to the Pigeon Forge police.
>
> After obtaining the above-described information Pigeon Forge police officers located the van which was still displaying the Georgia license plate number reported by the concerned citizen. The van was parked in front of a

2

mobile home. The police also observed that the van had a distinctive mud spot in the rear portion.[1] As the police secured the mobile home, they observed Mullican and further observed that he matched the physical description of the individual who committed the robbery. A search of Mullican revealed approximately five thousand dollars in United States currency.

Subsequent to Mullican's arrest, FBI agents obtained a consent to search the van and the mobile home. In the mobile home agents found a duffel bag which matched the description of the bag that had been used in the robbery. The occupants of the mobile home stated that Mullican had been staying with them prior to the robbery and that previously Mullican had said that he had robbed banks in the past and could get away with it. The occupants also said that they had loaned the mini van which had been found outside the mobile home to Mullican and when he returned to the mobile home after the robbery Mullican came into the mobile home and said that their money problems were over.

On the day of the robbery and at all times material to the charge in the indictment, the deposits of the Sevier County Bank, Pigeon Forge, Tennessee, were insured by the Federal Deposit Insurance Corporation.

[Criminal Action No. 3:03-cr-134, Court File No. 17, Factual Basis, pp. 1-2].

Mullican also agreed, as part of his plea agreement, that he would be sentenced as a career offender to a term of imprisonment of 235 months.

The Defendant acknowledges that he is a career offender under section 4B1.1 of the United States Sentencing Guidelines and pursuant to rule 11(c)(1)(C) agrees that the Court will impose a 235 month sentence, the maximum sentence applicable to him under that guideline provision. The parties agree that if the guideline range is [sic] applicable to the Defendant is determined to allow for a sentence higher than 235 months the United States will have the option to withdraw from this plea agreement.

---

[1] The affidavit of Paul Hughes, Special Agent with the Federal Bureau of Investigation, in support of the criminal complaint against Mullican, noted the following: "One of the bank employees saw the robber get into what he thought was a late 80s Ford Aerostar minivan with a distinctive mud spot visible on the rear portion of the van and drive off." [Criminal Action No. 3:03-cr-134, Court File No. 1, Affidavit of Paul Hughes attached to Criminal Complaint, pp. 1-2, ¶ 3].

[*Id.*, Court File No. 16, Plea Agreement, p. 4, ¶ 9].

Mullican was in fact sentenced to a term of imprisonment of 235 months on the armed bank robbery charge, to be followed by three years on supervised release. In addition, Mullican's supervised release in Criminal Action No. 1:96-cr-39 (E.D. Tenn.) was revoked for a second time and he was sentenced to a consecutive term of imprisonment of 18 months on the revocation, for a total effective sentence of 253 months.

In support of his § 2255 motion to vacate sentence, Mullican alleges numerous instances of ineffective assistance of counsel. He also claims his sentence as a career offender violated his Sixth Amendment right to trial by jury and relies on the Supreme Court decisions of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), for this proposition. Finally, Mullican alleges that his sentence as a career offender violated his Fifth Amendment right to be protected against double jeopardy. In a supplement to this § 2255 motion, Mullican alleges counsel was ineffective in failing to seek an evaluation of his mental status.

III. Discussion

*A. Ineffective Assistance of Counsel*

In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

4

> functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Mullican must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### 1. Revocation of supervised release

Mullican first alleges that his attorney failed to object to the sentence for revocation of supervised release. Mullican argues that he should not have been on supervised release at all, having served an earlier 18-month sentence on a previous revocation of his supervised release. He relies, for this proposition, on *United States v. Behnezhad*, 907 F.2d 896, 898 (9th Cir. 1990) ("[A] district court is not permitted to revoke a person's supervised release, order a term of incarceration *and* then order another term of supervised release.").

*Behnezhad*, however, was abrogated by *Johnson v. United States*, 529 U.S. 694, 713 (2000), in which the Supreme Court held that a district court may impose both custody and an additional term of supervised release following revocation.

Thus, counsel did not render ineffective assistance of counsel by failing to object to the sentence for revocation of supervised release. *See United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (the failure of defense counsel to pursue frivolous motions and objections cannot constitute ineffective assistance of counsel).

**2. Career offender status**

Mullican next alleges various instances of ineffective assistance of counsel with respect to his status as a career offender. For purposes of the sentencing guidelines, a career offender is defined as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Mullican was found to be a career offender, within the meaning of U.S.S.G. § 4B1.1(a), because his offense involved bank robbery and he had two prior violent felony convictions, one for manslaughter and one for bank robbery. Because his offense involved the use of a dangerous weapon, Mullican's statutory maximum sentence was 25 years, 18 U.S.C. § 2113(d), and therefore his base offense level was 34. U.S.S.G. § 4B1.1(b). After

6

a three-level adjustment for acceptance of responsibility, Mullican's total offense level was 31, and his criminal history category was VI, as required by the guidelines. *Id.* Based upon that, Mullican's guideline sentence range was calculated to be 188 to 235 months, and he was sentenced to 235 months as agreed upon in the plea agreement.

Mullican claims his base offense level should have been 32, resulting in a total offense level of 29 and a 151-188 range, and that his attorney should have argued that position. He relies on Amendment 506 to the Sentencing Guidelines, which altered commentary to U.S.S.G. § 4B1.1 to preclude consideration of statutory sentence enhancements in determining a career offender's statutory maximum sentence. Mullican thus claims that his use of a dangerous weapon should not have been used to increase his statutory maximum sentence from 20 years to 25 years, with the resulting increase of his base offense level from 32 to 34. Amendment 506 took effect on November 1, 1994, and was held invalid in 1997. *See United States v. LaBonte*, 520 U.S. 751 (1997). Mullican was sentenced in 2004 and therefore his attorney was not ineffective by failing to raise amendment 506; Mullican's claim to the contrary lacks merit.[2]

Mullican also alleges that his statutory maximum sentence should not have been increased based upon his use of a dangerous weapon because the gun was in fact a plastic toy gun, and that his attorney should have argued this point. This argument lacks merit. The

---

[2]In his reply to the government's response, Mullican states that he erred in referring to Amendment 506 and meant to refer to Amendment 599. Amendment 599 precludes a firearm enhancement of the sentence for an underlying offense if the defendant is also convicted of a firearm or ammunition offense under 18 U.S.C. §§ 924(c) or 929(a). Thus Amendment 599 does not apply in Mullican's case.

7

bank teller believed that Mullican possessed an actual weapon; the fact that it was a toy is irrelevant. *See United States v. Medved*, 905 F.2d 935, 939-40 (6th Cir. 1990) (a toy that looks like a real gun can put people's lived in jeopardy and thus can be a dangerous weapon for purposes of 18 U.S.C. § 2113(d)).

Mullican further alleges his attorney failed to investigate whether his manslaughter conviction was outside the fifteen-year time limit set forth in U.S.S.G. § 4A1.2(e)(1). With respect to computing a defendant's criminal history, § 4A1.2(e)(1) provides, in pertinent part:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

According to the presentence report, Mullican was convicted of manslaughter in the Circuit Court for Okeechobee County, Florida. He was sentenced to ten years probation on December 31, 1979, and his probation was revoked on August 25, 1983. Mullican was then sentenced to serve five years imprisonment; the sentence expired on April 8, 1989. [Criminal Action No. 3:03-cr-134, Presentence Investigation Report, p. 7, ¶ 28].

Mullican committed the instant offense on September 26, 2003. Because he was incarcerated during the 15 years prior to committing the instant offense, Mullican's manslaughter conviction was properly counted and counsel was not ineffective in failing to argue otherwise. In addition, by sentence imposed on April 19, 1990, Mullican was also convicted of escape by the United States District Court for the Eastern District of Arkansas.

[*Id.*, p. 10, ¶ 31]. Escape counts as a crime of violence for purposes of the career offender provisions. *See United States v. Harris*, 165 F.3d 1062, 1067-68 (6th Cir. 1999).

Finally, Mullican alleges that counsel should have objected to his status as a career offender based upon *Blakely v. Washington*, 542 U.S. 296 (2004). At the time of Mullican's sentencing, however, the Supreme Court had not issued its decision in *Blakely*. "The failure to anticipate a change in the law will not generally constitute ineffective assistance of counsel." *Brunson v. Higgins*, 708 F.2d 1353,1356 (8th Cir.1983) (citations omitted). In addition, *Blakely*, like *Apprendi v. New Jersey*, 530 U.S. 466 (2000), excepts from Sixth Amendment protection the fact of a prior conviction. Mullican's claim in this regard lacks merit.

### 3. Failure to file appeal

As his next ground for relief based upon ineffective assistance of counsel, Mullican alleges his attorney failed to file a notice of appeal. In *Ludwig v. United States*, 162 F.3d 456 (6th Cir. 1998), the Sixth Circuit held that "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment." *Id.* at 459. The Sixth Circuit emphasized, however, "that a defendant's actual 'request' is still a critical element in the Sixth Amendment Analysis. The Constitution does not require lawyers to advise their clients of the right to appeal." *Id. See also Regalado v. United States*, 334 F.3d 520, 524-526 (6th Cir. 2003) (failure to file an appeal is not ineffective assistance of counsel where attorney was not specifically instructed to do so).

9

In his affidavit in support of the § 2255 motion, Mullican states that, with respect to his attorney, "Paula R. Voss said she would [a]ppeal any sentence that was in violation of [l]aw." [Exhibit 4B]. Mullican was properly sentenced and thus there was no violation of the law that would support an appeal. Mullican does not state what the basis of such an appeal would have been nor does he claim to have instructed Ms. Voss to file an appeal. His claim for relief lacks merit.

**4. Failure to seek evaluation**

In a supplement to his § 2255 motion, Mullican alleges his attorney rendered ineffective assistance of counsel by failing to seek an evaluation of his mental status. According to Mullican, he was not in his right mind at the time of the bank robbery. In support of this claim, Mullican has provided a copy of the decision by Robert C. Haynes, Administrative Law Judge, Office of Hearings and Appeals for the Social Security Administration. [Court File No. 7, Exhibit A]. In an opinion dated January 3, 2005, Judge Haynes found that Mullican was disabled, for social security purposes, from November 6, 2001, through December 8, 2002, at which time he was incarcerated and no longer eligible for supplement security income.

The fact that Mullican was found disabled for purposes of receiving supplemental security income does not mean he was mentally incompetent to be found guilty of bank robbery. The standard of mental incompetence in criminal proceedings is clearly different from the standard under the Social Security Act with respect to an individual's ability to

maintain employment. *See, e.g., Harries v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005) ("A defendant is mentally incompetent to stand trial if he lacks a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against him.'") (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). There is nothing in the record to suggest that Mullican was mentally incompetent to stand trial. Accordingly, his attorney did not render ineffective assistance of counsel by failing to seek a mental evaluation of Mullican.

Based upon the foregoing, Mullican has failed to demonstrate ineffective assistance of counsel under the standard established by the Supreme Court in *Strickland*.

### B. *Apprendi, Blakely, and Booker*

Mullican alleges that his sentence as a career offender violated his Sixth Amendment right to trial by jury based upon the Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). As noted earlier, *Blakely* and *Apprendi* except from Sixth Amendment protection the fact of a prior conviction. Accordingly, neither *Blakely* nor *Apprendi* afford Mullican any relief.

In *Booker*, the Court noted that its holding should be applied "to all cases on direct review." *United States v. Booker*, 543 U.S. at 268. The Court did not state that the holding should be applied retroactively on collateral review of cases in which the judgment has become final. In fact, the Court quoted *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), for

11

the proposition that "'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" *Id*. The Sixth Circuit has held that *Booker* "does not apply retroactively in collateral proceedings." *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir.), *cert. denied*, 126 S. Ct. 199 (2005). Thus, *Booker* cannot provide Mullican any basis for relief.

## C. Double Jeopardy

Mullican alleges that his sentence as a career offender violated his Fifth Amendment protection against double jeopardy. According to Mullican, it constituted double jeopardy to convict him of armed bank robbery, based upon his use of a dangerous weapon, and then to enhance his statutory maximum sentence, for career offender purposes, based upon his use of a dangerous weapon.

The Double Jeopardy Clause of the Fifth Amendment guarantees three separate constitutional protections: protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). In general, however, double jeopardy principles are not applicable to sentencing proceedings and Mullican's argument lacks merit. *See Monge v. California*, 524 U.S. 721, 728 (1998). "An enhanced sentence imposed on a persistent offender thus 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes' but as

12

'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'" *Id.* at 728 (quoting *Gryger v. Burke*, 334 U.S. 728, 732(1948)); *see also United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003) ("double jeopardy principles generally have no application in the sentencing context"). Mullican's claim that his sentence as a career offender constituted double jeopardy lacks merit.

IV.     Conclusion

Mullican is not entitled to relief under § 2255 and his motion to vacate, set aside or correct sentence will be **DENIED**. This action will be **DISMISSED**. In addition to the above, this court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this court will **DENY** Mullican leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Mullican having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE